IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADRIAN L. JOHNSON,

      Plaintiff,

v.                                        CIV 98-432 MV/KBM

DON MEDINA, Director of Corrections
Corporation of America, in his Individual
Capacity,

      Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant's Motion To Dismiss *(Doc. 13)* and Plaintiff's Motions To Amend *(Docs. 17, 18)*. Having considered the arguments, pleadings, relevant law, and being otherwise fully advised, I recommend that each motion be denied and that a *Martinez* report issue.

### Procedural Background

Plaintiff was formerly incarcerated at the Torrence County Detention Facility, which is run by Corrections Corporation of America ("CCA"). He was stabbed by another inmate and claims that though prison staff had advance warning of racial tension and stolen knives, they did not search thoroughly enough for the knives thereby jeopardizing the safety of the inmates.

In his original complaint, Plaintiff sued Defendant Medina, Director of CCA and seven "John Doe" defendants in their official and individual capacities. The Doe defendants were identified by their positions at the Torrence facility: Chief of Security; Officer in charge of the

dining room; Officer in charge of recreation, Staff Training Officer, and Correctional Officers. Plaintiff seeks compensatory damages, damages to cover the cost of corrective surgery, punitive damages, costs, and fees incurred by any attorney who may be appointed later.

District Judge Martha Vázquez dismissed Plaintiff's claims for money damages as against CCA and all defendants in their official capacities. The dismissal was without prejudice to Plaintiff's right to amend and identify the individuals in their individual capacities. Summons issued for Defendant Medina in his individual capacity.

Defendant Medina moves to dismiss the action against him arguing that Plaintiff fails to allege any personal involvement or actual knowledge on his part and the Plaintiff fails to allege the degree of intent necessary to justify an award of punitive damages. If granted, he seeks attorney fees and costs as the "prevailing party."

Plaintiff moves to amend his complaint to add as defendants "Lieutenent (sic) Maler; Captain Ibarra; Mrs. Cook, The Corrections Officer Trainer at that Facility; Correctional Officers Mrs. Anaya, Mrs. Miestras, Mail Room Personnel Mrs. Parker" and "several" unidentified correctional officers. He also filed an affidavit in support of his claims.

### **Plaintiff's Allegations Raise Failure To Protect and Failure To Train Claims**

The allegations contained in Plaintiff's proposed amended complaint and his affidavit are essentially the same as those in his original complaint but with more detail. He claims that on April 11, 1997, prison staff were made aware of racial tensions when an argument erupted between a Mexican and African American inmate during a basketball game. On April 13, 1998, these two inmates were called in for questioning regarding the basketball game incident. The same day knives and other things were discovered missing from the prison's kitchen. Inmates who work in the kitchen were subjected to a pat-down search, but none of the missing items were

found. Although security was increased in the recreation yard following the discovery of the missing knives, a "full scale search of the jail" was not conducted and the missing knives were never recovered. Plaintiff asserts some of the prisoners who had the knives were known to other inmates and that they "repeatedly" asked prison staff to "do something about" it. In response, correctional officers told Plaintiff and others that the correctional officers "were not trained to deal with and/or handle inmates or prisoner's who had the knives and, that a Special team would be called in if the knives were used." *Tendered Amended Complaint, see also Complaint.* On April 16, 1997, a fight broke out in the recreation yard and plaintiff was stabbed in the face and arm.

In short, Plaintiff is claiming that prison officials knew of a potential danger and did not do enough to recover the lost knives and that correctional officers were inadequately trained to respond to the resulting altercation. Plaintiff's allegations thus implicate Eighth Amendment claims for failure to protect and failure to train.

### **Failure To Protect Claim Should Not Be Dismissed**

"Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society,'" *Farmer v. Brennan,* 511 U.S. 825, 834 (1994), (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Accordingly, the Eighth Amendment imposes a duty on prison official to take reasonable measures to protect prisoners against violence from other prisoners. *E.g., Grimsley v. MacKay,* 93 F.3d 676 (10th Cir. 1996); *Riddle v. Mondragon,* 83 F.3d 1197 (10th Cir. 1996). There are two prongs to a failure to protect claim. Plaintiff must show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847; *see also Grimsley,* 93 F.3d at 681; *Riddle,* 83 F.3d at 1205.

3

> "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.
>
> * * * * *
>
> [A] prison official [cannot] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault . . . it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces and excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.
>
> * * * * *
>
> Because however prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware of even an obvious risk to inmate health or safety. . . . for example, that they did not know of the underlying facts indicating a sufficiently substantial danger . . . . In addition, prison officials who actually knew of as substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."

*Farmer,* 511 U.S. at 842-844.

Plaintiff must show that each defendant he seeks to hold responsible was personally involved with the conduct of which he complains. It is not sufficient to show that a defendant merely is employed in a supervisory role *vis-a-vis* those who knew of the risk and disregarded it. *See Grimsley,* 93 F.3d at 680 (in a situation where inmate's eye was crushed when correctional officers waited to intervene in a beating until the number of officers required by regulation arrived and administrator defendants were involved with the training program but had no supervisory responsibility for the correctional officers, court held "acknowledgment of a general need to train guards is a connection far too attenuated to support liability under § 1983"); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (no evidence connecting supervisors to guards who beat plaintiff); *Tesoro v. Zavaras,* 46 F.Supp.2d 1118, 1124 (D. Colo. 1999) ("Tesoro has offered no evidence of any kind from which an inference that Neal participated in the incident or

4

knew of and deliberately ignored a threat to Tesoro.").

In reviewing the sufficiency of a *pro se* plaintiff's pleadings, the Court presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff. *E.g., Riddle,* 83 F.3d at 1202; *Hall v. Bellmon,* 935 F.2d 1106, 1109-1110 (10th Cir.1991). Even though a *pro se* plaintiff need not describe every fact in "specific detail" conclusory allegations "without supporting factual averments are insufficient to state a claim on which relief can be based" *Id.* (quoting *Hall*). On the other hand, "the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." *Id.*

Defendant argues that because Plaintiff does not allege that Medina personally knew the knives were stolen or ordered/conducted an inadequate search, the complaint fails to state claim under FED. R. CIV. P. 12(b)(6). His motion was filed before Plaintiff moved to amend his complaint and filed his affidavit. In his affidavit, Plaintiff alleges that after discovering missing knives and not finding them on those inmates leaving the kitchen, Defendant "knew or should have known" that there was a "serious threat" to the inmates yet deliberately ignored it and conducted no further search for the weapons. Plaintiff alleges that "further evidence" that Defendant knew of the seriousness was "increased security [posted] in the recreation yard." On their face, these allegations are sufficient to withstand a motion to dismiss for failure to state a claim and to require that a factual record be developed to evaluate whether the summary judgment on this issue is appropriate. Accordingly, the motion should be denied as to the claim of failure to protect.

### Failure To Train Claim Should Not Be Dismissed

A supervisor may be held liable in his individual capacity "where there is essentially a

5

complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988); *see also Sutton v. Utah State Sch. for Def & Blind,* 173 F.3d 1226, 1239 (10th Cir. 1999). Plaintiff alleges that he was told by correctional officers that matters to do with knives were outside their jurisdiction and were to be left to a "special team." Defendant does not specifically respond to this claim in his motion to dismiss, and at this juncture, the failure to train claim would be best addressed on a summary judgment motion.

## Punitive Damages Claim Should Not Be Dismissed

Punitive damages are only awarded upon a showing that defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Green v. Johnson,* 977 F.2d. 1383, 1389 (10th Cir. 1992) (citing *Jolivet v. Deland,* 966 F.2d 573, 577 (10th Cir. 1992), and quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Defendant argues that because Plaintiff does not state that he acted with evil motive or callous indifference the complaint fails to state a claim for punitive damages. Plaintiff, however, makes those allegations in his affidavit. Accordingly, the claim for punitive damages should not be dismissed at this time.

## Plaintiff's Motion To Amend For The Purpose of Adding Defendants Should Be Denied

This Court's previous order granted Plaintiff "a reasonable amount of time to identify and assert claims against specific Doe Defendants, affirmatively linking them to specific events." *(Doc. 8, p. 2).* In his motion and proposed amended complaint, Plaintiff identifies a number of persons he now wishes to join, but he fails to link them to specific events. Plaintiff is well aware of the specificity that the Court requires because he attached a copy of the Court's order to his motion to amend and because he eventually cured the deficient allegations against Defendant

6

Medina in his affidavit. Accordingly, Plaintiff's motion to amend to add additional individual defendants should be denied.

## *Martinez* Report Should Be Ordered

Under *Martinez v. Aaron,* 570 F.2d 317, 320 (10th Cir. 1978), this Court may order defendants to investigate the incident or incidents underlying plaintiff's lawsuit and submit a report of their investigation in order to develop a factual or a legal basis for determining whether a prisoner plaintiff has a meritorious claim. *See, e.g., Gee v. Estes,* 829 F.2d 1005, 1007 (10th Cir. 1987). A *Martinez* report may be used in a variety of contexts, including motion for summary judgment or *sua sponte* entry of summary judgment. When a *Martinez* report is used for summary judgment purposes, the *pro se* plaintiff must be afforded an opportunity to present conflicting evidence to controvert the facts set forth in the report. *Hall,* 935 F.2d at 1109.

In a case involving similar allegations that prison officials knew of a potential assault and did nothing to prevent it, Defendant was ordered to prepare a *Martinez* report. *See Perine v. Dorsey,* CIV 97-1004. To evaluate Plaintiff's claim, Defendant Medina should be required to submit a *Martinez* report in this case as well, setting forth in detail and including any documentation related to:

1. how the theft of the knives was discovered;

2. the prison's response of searching the inmates working in the kitchen;

3. what information the prison had regarding who took the knives;

4. the circumstances surrounding the decision not to conduct a more extensive search;

5. when Defendant had knowledge, if any, of these events and his role in formulating decisions in that regard; and

6. the prison's policies and training with regard to searching for weapons, disarming inmates, and responding to inmate on inmate attacks.

The report can be submitted alone or in conjunction with a motion for summary judgment.

### **Award of Attorney Fees and Costs**

"A prevailing defendant in a civil rights action may recover attorney's fees under 42 U.S.C. § 1988 if the suit 'was vexatious, frivolous, or brought to harass or embarrass the defendants.'" *Utah Women's Clinic, Inc. v. Leavitt,* 136 F.3d 707 (10th Cir. 1998) (quoting *Hensley v. Eckerhard,* 461 U.S. 424, 429 n.2 (1983)). Similarly, a court may, award costs to a prevailing defendant under FED. R. CIV. P. 54(d). *See Aerotech, Inc., v. Estes,* 110 F.3d 1523. 1526 (10th Cir. 1997) (one of factors to consider is indigency of plaintiff). Because Defendant has not prevailed, an award is inappropriate.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion To Dismiss *(Doc. 13)* be denied;

2. Plaintiff's Motions To Amend *(Docs. 17, 18)* be denied;

3. Either alone or in conjunction with a motion for summary judgment, Defendant Medina submit a *Martinez* report setting forth in detail and including any documentation related to:

    a. how the theft of the knives was discovered;

    b. the prison's response of searching the inmates working in the kitchen;

    c. what information the prison had regarding who took the knives;

    d. the circumstances surrounding the decision not to conduct a more extensive search;

    e. when Defendant had knowledge, if any, of these events and his role in formulating decisions in that regard; and

  f.  the prison's policies and training with regard to searching for weapons, disarming inmates, and responding to inmate on inmate attacks;

4. The *Martinez* report be filed within thirty (30) days of the date of entry of this recommendation; and

5. Plaintiff's response to the *Martinez* report be filed within fifteen (15) days of receipt of the report. The report may be used by the Court for summary judgment purposes.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE